UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



******************************************************************************
| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 10-40049 |
| Plaintiff, | * | |
| | * | MEMORANDUM OPINION |
| vs | * | AND ORDER RE: ADJUSTMENT |
| | * | IN RESTITUTION PAYMENT |
| TAMERA DEE PETERSON, | * | |
| Defendant. | * | |

******************************************************************************

On Wednesday, November 23, 2011, a hearing was held on a motion requesting equitable relief in the collection of restitution in the above action. The United States was represented by Jan Holmgren and the Defendant was represented by Timothy Langley. The Court heard argument from the parties and received information from Shelly Schenkel from the U.S. Probation and Pretrial Services.

Defendant, who was convicted of bank fraud, was ordered in the Second Amended Judgment (Doc. 44) to pay restitution in the total amount of $38,690.60 in monthly installments of $100, to over fifty victims. The victims are primarily casinos, convenience stores, and other businesses. Defendant has made payments totaling $575.00. Ex. 3. In late August 2011, the Defendant learned that Minnehaha County was going to foreclose on her home due to back taxes owed on the home from when her mother owned the home. Defendant was unable to obtain the money to pay the taxes. She consequently decided she would have to sell the home to pay off the real estate taxes and obtain other housing for her family.

On 10/20/2011 the home was auctioned, and sold for $74,500. After the sale Defendant learned that the United States intended to take from the proceeds the full amount of restitution Defendant owed in the District of South Dakota. There were additional liens and judgments filed against the property. Many of the liens attached several years ago when Defendant's mother owned the property. Shortly before the scheduled closing, Defendant learned the proceeds of the sale did not exceed the amount of the restitution and liens on the property, and that she owed more than $2,581.85 to the title company. At the time of the Wednesday, November 23, 2011 hearing, Defendant did not have the money to pay the closing costs, and she and her family faced being

homeless after the closing if relief were not obtained from this Court.

## DISCUSSION

Under 28 U.S.C. § 3013[1] the Court is vested with statutory oversight of the manner and method of collection of restitution under the Federal Debt Collection Procedures Act, and may and should curtail the enforcement tools selected by the Government if presented with facts and circumstances that warrant taking such action. *See United States v. Mayes,* CIV. 06-4060, 2007 WL 3001670, (D.S.D. Oct 10, 2007);*United States. v. Woods*, CRIM. 97-0157, 2010 WL 4386900 (S.D.Ala., Oct. 29, 2010). Courts may rely upon 28 U.S.C. § 3013 in modifying garnishment orders so that a defendant may have sufficient funds to meet his or her family and household obligations. *See United States v. Kaye*, 93 F.Supp.2d 196, 199 (D.Conn. 2000)("Defendant's dependents, who may have benefitted, indirectly, from his pilferage, do not share his culpability nor responsibility to make restitution. They are entitled to reasonable support.").

In addition, sentencing courts retain the equitable power to modify a criminal restitution order if the defendant's circumstances change. *See Fed. Deposit Ins. Corp. v. Dover*, 453 F.2d 710, 715 (6th Cir. 2005).18 U.S.C. § 3664(k) authorizes a court to adjust the enforcement of a restitution obligation "as the interests of justice require."[2] In establishing the manner in which restitution is to be paid, a court must consider "any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. § 3664(f)(2)(C). In the case at hand, Defendant has three minor children in her care. One of these children has been diagnosed with Helen Keller and Apert syndromes and is going blind. The sale of Defendant's house has left her and her children in danger of becoming homeless unless less than the full amount of restitution is taken from the proceeds of the sale of the house. The interests of justice require that less than the full amount of restitution be deducted from the proceeds from the sale of the house to be utilized to satisfy the restitution obligation so that

---

[1] 28 U.S.C. § 3013 provides: "The court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter."

[2] 18 U.S.C. § 3664(n), which requires a person obligated to pay restitution to apply substantial resources received from any source to the restitution obligation only applies to incarcerated defendants.

Defendant retains some proceeds from the sale of the house allowing Defendant's family to be able to secure housing.[3]

Counsel for the Government contended at the November 23, 2011 hearing that the more than fifty restitution victims must be notified and given the opportunity to be heard before the Court could consider providing any of the relief requested on Defendant's behalf. It was the position of the Government that even with notice the Court had no authority to do anything in this case. If correct, that would mean no closing and no sale proceeds with the real property to be sold at a tax sale absent another auction. The Court is not changing the restitution amount due the victims and has not been provided any persuasive authority that notice to the victims is required in this matter. Although the Crime Victims Rights specifies instances in which the victims of a crime have the right to be reasonably heard at specified public hearings, the situation at hand is not included in those specified instances. *See* 18 U.S.C. § 3771(4).[4] In the case at hand the Court believes it is in the best interest of the victims in this case that the closing be held as soon as possible to eliminate the possibility that the buyer reconsiders and if so, that additional costs would be incurred in connection with the resale of the property. A resale and its expenses would compromise the lump sum payment of restitution the victims will receive if the closing occurs as planned.

At the hearing on November 23, 2001, Shelly Schenkel from the U.S. Probation and Pretrial Services, requested that the victims of previously dismissed theft by insufficient funds check charges in Lincoln County, Pump N Pak, and Woodridge Casino, be paid in full first because the charges had been dismissed on the assumption that they would receive full compensation. Although counsel for the Government contended at the hearing that the Court could not provide different payment schedules for the different victims, the Court, in fact, has the ability to establish different payment

---

[3] In its Order for hearing, the Court requested that the parties be prepared to discuss the application of any possible exemption under 28 U.S.C. § 3014(a)(1). The Court need not consider this exemption because a defendant bears the burden of proving that her property is exempt from a federal debt collection action under 28 U.S.C. § 3014, and Defendant has made no such claim of exemption.

[4] 18 U.S.C. § 3771(4) provides a crime victim the "right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding."

3

schedules for the different victims pursuant to 18 U.S.C. § (i).[5]

In conclusion, the Court has determined that the interests of justice require it to adjust the payment schedule of restitution to allow Defendant to retain funds from the proceeds of the sale of her house so as to provide housing for herself and her family, and to order payment in full of the restitution owed to Pump N Pak and Woodridge Casino before payment of the restitution owed to the other victims in this case. Accordingly,

IT IS ORDERED:

1. That Getty Abstract & Title Company shall pay the closing costs associated with the sale of the property located at 1417 S. West Avenue, Sioux Falls, South Dakota, before satisfying the judgment lien to the United States for restitution in the above action;

2. That Getty Abstract & Title Company shall issue a payment of $5,000 to Defendant Tamera Dee Peterson, from the proceeds of the sale of the property located at 1417 S. West Avenue, Sioux Falls, South Dakota, before satisfying the judgment lien to the United States for restitution in the above action;

3. That full restitution owed to Pump N Pak, and Woodridge Casino shall be payed before lump sum partial restitution payments are made to the other victims in this case; and

4. That after the restitution payments are made to the victims from the proceeds of the sale of the property located at 1417 S. West Avenue, Sioux Falls, South Dakota, Defendant Tamera Dee Peterson shall continue to make monthly restitution payments of $100.

Dated this 28th day of November, 2011.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Summer Wahl(?)
DEPUTY

---

[5] 18 U.S.C. § (i) provides in part: "If the court finds that more than 1 victim has sustained a loss requiring restitution by a defendant, the court may provide for a different payment schedule for each victim based on the type and amount of each victim's loss and accounting for the economic circumstances of each victim."